**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RANDY LANGLEY,

    Plaintiff-Appellant,

 v.

JOSE COLEGIO,

    Defendant-Appellee.

No. 19-16994

D.C. No. 1:16-cv-00336

MEMORANDUM*

Appeal from the United States District Court
For the Eastern District of California
Sheila K. Oberto, Magistrate Judge, Presiding

Argued and Submitted February 9, 2021
San Francisco, California

Before: WARDLAW and BEA, Circuit Judges, and ROSENTHAL,** District
Judge.

 Randy Langley appeals from a jury verdict denying his 42 U.S.C. § 1983

claim that Officer Jose Colegio violated the Fourth Amendment's prohibitions on

warrantless search and seizure and excessive force by searching and eventually

---

  *  This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

  **  The Honorable Lee H. Rosenthal, Chief United States District Judge
for the Southern District of Texas, sitting by designation.

tasing Langley during a routine stop. We have jurisdiction under 28 U.S.C. § 1291. We review Langley's unpreserved evidentiary objections and claim of attorney misconduct for plain error and affirm the judgment below.

This case arises from a 2015 incident that began when Colegio observed Langley walking in a high crime area early in the morning and initiated a stop. Colegio learned during the stop that Langley was on a type of probation that subjected him to search without reasonable suspicion or a warrant. Colegio searched Langley's backpack and confiscated a knife from Langley's back pocket. The stop escalated into a physical altercation that ended when Colegio tased Langley in the face and chest. Langley was later apprehended and had his probation revoked for assault on an officer and resisting arrest.

Langley sued Colegio and the City of Tulare under 42 U.S.C. § 1983. The district court twice denied Langley's request for appointment of counsel and dismissed the municipal liability claim under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), but allowed the claims against Colegio to proceed to a jury trial. Langley, now back in prison for a subsequent felony conviction based on an incident for which Colegio was the arresting officer and a witness at trial, proceeded to trial *pro se*. The jury heard testimony from Langley, Colegio, and Langley's probation officer, and returned a verdict for Colegio. This timely appeal followed.

2

1.      Langley argues the court plainly erred by failing to intervene during opening statements when Colegio's attorney, John Lavra, referred to the fact that Langley was on probation during the encounter with Colegio because of a 2013 felony conviction.  We disagree.  The challenged reference to "the status of the … probation" and "other information about Mr. Langley's criminal history" was unproblematic because Langley admitted to having a criminal history in his opening statement and because Langley's probation included a search condition that justified Colegio's 2015 search.  Moreover, the court *did* intervene outside the presence of the jury by ruling that aspects of Langley's criminal history were admissible only for the limited purpose of impeaching Langley as a witness with a prior felony conviction.  *See* FED. R. EVID. 609(a)(1)(A).

2.      Langley argues the court plainly erred by allowing the jury to hear testimony about Langley's unrelated 2016 arrest and felony conviction.  We disagree.  The Federal Rules of Evidence permit the admission of certain criminal history evidence to show bias on the part of a testifying witness so long as its probative value is not substantially outweighed by the risk of unfair prejudice.  *See* FED. R. EVID. 404(b)(2), 403; *United States v. Abel*, 469 U.S. 45, 51–53 (1984).  Our court has long held that evidence of a witness's prior arrests or convictions by particular officers is admissible to suggest bias on the part of the witness against those same officers in a future case.  *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir.

1987); *see also Barkley v. City of Klamath Falls*, 302 Fed. App'x 705, 706 (9th Cir. 2008). Here, Langley's 2016 arrest by Colegio and his resulting conviction were admissible to show Langley's bias against Colegio and thereby to impeach the credibility of Langley's testimony against the officer responsible for his current term of incarceration. Langley failed to demonstrate that his arrest and conviction should have been excluded as immaterial or too remote in time to the trial here, which occurred in 2019. *Cf. United States v. Hanson*, 936 F.3d 876, 882 (9th Cir. 2019).

3. Langley argues the court plainly erred by allowing the jury to hear, during Lavra's redirect examination of Langley's probation officer, that Langley's probation was revoked for methamphetamine possession and for two domestic violence incidents between 2013 and 2015. We disagree. We are not convinced Langley "opened the door" to testimony about his probation revocations by asking his probation officer on cross-examination about Langley's general behavior and demeanor as a probationer. *Cf. United States v. Wales*, 977 F.2d 1323, 1326 (9th Cir. 1992). We have held that "opening the door" only allows the opposing party "to introduce evidence on the same issue to rebut any *false* impression that might have resulted from the earlier admission." *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007) (citation omitted). Here, Lavra elicited details about the probation revocations on redirect that Langley did not raise or implicate on cross-

4

examination.  However, we need not decide whether this was error or an obvious error because we conclude Langley failed to demonstrate that admission of the testimony prejudiced his substantial rights.  The court quickly cut off Lavra's line of questioning on redirect, and later instructed the jury that criminal history evidence "may be considered along with all other evidence in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose."  The gap between the actions taken by the court and possible additional correctives, such as an immediate curative instruction, is insufficient to establish prejudice warranting reversal.

4.    Finally, Langley seeks a new trial on the ground that Lavra committed intentional attorney misconduct by repeatedly violating the Federal Rules of Evidence, thereby rendering the trial fundamentally unfair.  We disagree.  To obtain reversal on account of attorney misconduct, the appellant must show both that opposing counsel's actions were intentionally improper and that the "flavor of misconduct sufficiently permeate[d] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (citation omitted).  Langley's claim fails on the first prong because, as discussed above, almost all the references to Langley's criminal history challenged on appeal were admissible.  It is true that the court sustained objections or intervened *sua sponte* in

5

six other instances in which Lavra sought to reference Langley's criminal history. However, those instances involved good faith, albeit inartful, attempts by Lavra to elicit testimony that was, for the most part, later admitted when presented with the proper foundation. Upon review of the whole record, we are not left with the conviction that Lavra acted "with the sole purpose of bringing to the jury something it should not have heard." *Maricopa Cty. v. Maberry*, 555 F.2d 207, 219 (9th Cir. 1977); *see also United States v. Younger*, 398 F.3d 1179, 1191 (9th Cir. 2005) (rejecting claim of attorney misconduct where, although prosecutors may have erred by improperly "vouching" for witness testimony during closing arguments, "the prosecutors used the phrase 'we know' to marshal evidence actually admitted at trial").

**AFFIRMED.**